## SHELL PIPE LINE CORPORATION v. HALL et al.

No. 29920. May 6, 1941.

Rehearing Denied July 8, 1941.

*115 P. 2d 137.*

Geo. W. Cunningham, Ralph J. May, and W. D. Simms, all of Tulsa, for plaintiff in error.

Stephen A. George and John Clark Caldwell, all of Ardmore, for defendants in error.

BAYLESS, J. Shell Pipe Line Company appeals from a judgment of the district court of Carter county, based on the verdict of a jury in favor of Billy Joe Hall et al.

Company maintains a pipe line across the land of the plaintiffs, and oil escaped from this line and plaintiffs' land and cattle were injured by being exposed thereto, or coming in contact therewith.

The sole issue of law presented on this appeal is best stated in the language of company's brief:

"Although the defendant feels that the verdict in this case is excessive and not supported by the evidence, we, at this time, advise this court and plaintiffs that we shall raise only the issue that the plaintiffs have failed to prove any negligence on the part of the defendant."

This issue is divided in the presentation into these points: (1) Even though plaintiffs were entitled to rely on the rule of res ipsa loquitur, negligence on company's part must be shown; and (2) plaintiff's evidence is not sufficient, under res ipsa loquitur, to justify submitting the issue of negligence to the jury.

Relying on Gulf Pipe Line Co. v. Alred, 182 Okla. 400, 77 P. 2d 1155, and Gulf Refining Co. v. Carruthers, 185 Okla. 96, 90 P. 2d 407, and Keefer v. Public Service Co., 185 Okla. 94, 90 P. 2d 409, company insists that the presumption of negligence that arises from plaintiff's showing is not a presumption that carries the issue to the jury in all cases, but is only a rule of evidence relating to shifting the burden of going forward with the proof. In

146

other words, that it relieves the plaintiff of a burden of initial proof, but is a rebuttable presumption, a presumption that disappears in the light of explanatory proof that is positive, uncontradicted, and such that the minds of reasonable men might not differ concerning its effect. Company admits that the burden of explaining passed to it in this case, but insists that its explanatory evidence fully rebutted the presumption.

Plaintiffs do not differ materially from company's interpretation of the law stated in the cases cited by company, but they do call attention to certain language in Gulf Refining Co. v. Carruthers, supra, as follows:

"The rule deducible therefrom also is that the jury may infer negligence, that is, want of due care, from the fact of the escape of the oil and attendant circumstances."

—and argue that the proof of attendant circumstances is such as to establish evidence about which the minds of men might differ.

The evidence as a whole shows these facts: This line was laid in 1916; in 1927 was reconditioned (meaning the pipe was raised, inspected, defective units removed, the whole line painted and taped, and reburied); in 1929, a break happened in this line on this land, and this break was repaired; in March, 1938, a second break occurred at this point when the gasket in the stuffing box used to repair the first break blew out, and a quantity of oil escaped injuring plaintiffs' land and cattle.

To meet the inference of negligence arising from these facts, company proved by positive, and what may be called for this discussion uncontradicted, evidence the following: The previous break was repaired with a device in general use in the industry, which device is fitted around the break in a pipe and by clamps and applying requisite pressure and the use of "stuffing" (a material not described) a repair is effected that is "considered permanent"; that lasts "indefinitely or a considerable length of time"; that this device had served for nine years; that such devices had been in general use about 16 years and witnesses had never known one to break before; and that a constant supervision of this line was maintained by a walker. From this it is argued that the minds of reasonable men would not differ in determining whether due care had been used and the existence of any specific negligence negatived, and that the answer would be in favor of company.

Before proceeding further we must stop to observe that we feel that company unduly limits the consideration of the issue of negligence in this: It directs entire attention to the break and apparently feels when it has shown that it was not guilty of negligence with respect to the break, it is completely exonerated. The language of the petition is that company "permitted a large quantity of crude oil and other deleterious substances to escape from its pipe line . . . and to flow over and across said lands." The evidence of plaintiffs has a tendency to establish delay in reaching the scene of the break, and to show the failure to effectually dispose of the oil spilled on the ground, by reason of which it became necessary for company's employees to return a second time to dispose of oil that had been further dispersed by an ensuing rain. Because of this, additional cattle and land were injured, and the damages increased.

One of company's witnesses was asked what, in his opinion, caused the break in the device, and said: "Condition in the line that caused the pipe to break out of the collar." He followed this with an answer to another question saying he had never known another gasket like this to break. He did not elaborate on the "condition in the line" that caused the line to break, and no other witness testified on the point. It is known that nature is always at work deteriorating the line, and it is known that oil is forced through these lines under pressure, and it is known that cold weather contracts the

pipes and hot weather expands them. In addition to the burden placed on the pipes by company's service, nature constantly wars on the pipes, and despite the best efforts within practicable limits, conditions exist or come into existence that cause breaks.

Another witness testified that pipe laid for such uses had a varying length of life depending on the quality of the pipe and the type of soil in which it is laid.

The physical condition of the pipe— that is, its outward appearance—was not described. The line (except joints or pipe inserted later as replacements) had been in the ground about 22 years; it had been reconditioned at the end of eleven years; and the device had been underground nine years. We think it cannot be said that a device used as a repair would be expected to last longer than any unit of pipe, and the joint of pipe it repaired had deteriorated and leaked in 13 years despite inspection and reconditioning. Irrespective of what length of service might be expected from a repair device such as this, it involved the application of pressure and the use of "stuffing" (evidently a compressible material), and we think men could differ easily respecting the length of life that reasonably could be expected therefrom.

Company proved a system of inspection of the pipe line by men who walked the course of the line once a week, more or less, and who reported breaks, etc. While this practice is a precaution, it is obvious it cannot be an effectual inspection of the condition of the buried pipe, and the physical changes occurring therein. The best result to be reasonably expected therefrom, barring visible damages to the line, is to discover breaks in the line after they occur.

From admissions of company's witnesses breaks do occur in the line, and from precautions taken breaks in the line are expected, and from company's evidence the lines and repair devices have a limited life.

We think the aspects of the situation all come within the classification of attendant circumstances mentioned in the cases, supra, that may be considered in determining the issues of negligence.

It is our opinion that the minds of reasonable men would not concur in saying that company had used due care in maintaining the line, and in reaching the scene of the break and in stopping the leak and caring for the situation generally; and that all of the facts are such that reasonable men could say company had failed in its duty toward plaintiffs.

Judgment affirmed.

CORN, V. C. J., and RILEY, HURST, and DAVISON, JJ., concur.